IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
FLORIDA TALLAHASSEE DIVISION

PROVIDED TO
HOLMES CI ON

NOV 2 8 REC'D
DC

FOR MAILING

**DWAYNE LEBARR,**
Plaintiff,

v.                                             Case No: 5:21cv233-TKW/MJF

**FLORIDA DEPARTMENT OF
CORRECTIONS, T. CHILDREE,
J. BAILEY, R. HOLMES, W.
CARLTON.**
              Defendant(s),

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

FILED USDC FLND TL
DEC 6 '21 PM4:54

I. PARTIES

Plaintiff

   A) Dwayne Lebarr, is an inmate whose currently housed at Holmes Correctional Institution, 3142 Thomas Drive, Bonifay, Florida, 32425.

Defendant(s)

   A) Mark Inch is the Secretary of the Florida Department of Corrections whose address is: 501 South Calhoun Street, Tallassee, Florida 32399. Mr. Inch is responsible and oversees, the care custody and control of inmates in the FDOC. Mr. Inch is also responsible for implementing policies and the structural direction of FDOC. Mr. Inch is being sued in his individual and official capacity.

   B) Tyler Childree is employed with the Florida Department of Corrections whereas he is a Correctional Officer Sergeant at the Holmes Correctional Institution. Mr. Childree's address is: 3142 Thomas Drive, Bonifay, Florida 324235. Mr. Childress's is being sued in his individual capacity.

   C) Jordan Bailey is employed with the Florida Department of Corrections whereas he is a Correctional officer at the Holmes Correctional Institution. Mr. Bailey's address is: 3142 Thomas Drive, Florida, Bonifay, Florida 32425. Mr. Bailey is being sued in his individual capacity.

   D) Willie Carlton is employed with the Florida Department of Corrections whereas he is a Correctional Officer Sergeant at the Holmes Correctional Institution. Mr. Carlton's address is: 3142 Thomas Drive, Bonifay, Florida, 32425. Mr. Carlton is being sued in his individual capacity.

E) R. Holmes is employed with the Florida Department of Corrections whereas he is a Correctional Officer at the Holmes Correctional Institution. Mr. Holmes address is: 3142 Thomas Drive, Bonifay, Florida 32425. Mr. Holmes is being sued in his individual capacity.

## II. JURISDICTION

1. This court has jurisdiction over the plaintiff's claim of violation of Federal Constitutional Rights under 42 U.S.C. §1983.

2. During all times mentioned herein this complaint the defendants acted under the color of state law at the times to the facts alleged.

## III. INTRODUCTION

3. This is a civil right action filed by, Dwayne Lebarr, an inmate in the Florida Department of Corrections (FDOC), for damages relief under 42 U.S.C. 1983, alleging deliberate indifference to the welfare, safety and protection of the plaintiff's person in violation of the eighth amendment of the United States Constitution.

## IV. GENERAL ALLEGATIONS AND STATEMENT OF FACTS[1]

4. Like America's society, the Florida Department of Corrections (FDOC) is diverse.

5. The only difference is: the limited freedom individuals (inmates/prisoner) have who are under the FDOC care, custody, and control.

---

[1] The foregoing language that will be litigated in this cause may appear insensitive and degrading, however, in order to provide this Honorable Court with a clear picture of the reality of life in prison, the word "sissy" will appear frequently. The plaintiff is an open-minded person and does not see this word as degrading or disrespectful per Webster's definition. The plaintiff brings this cause to underscore genuine hazardous issues that are in the interest of so many LGBTQ plus individual in FDOC care.

6. In this cause of action, the plaintiff grievance are within the male institutions.

7. In these institutions, openly gay males (Homosexual) are treated aggressively different by Security Threat Gang (STG and or Gang members).

8. According to a vast majority of STG's, these organizations has creed/laws that prohibit Homosexuality by its members.

9. Members who have found to be involved in the slightest appearance of homosexuality activity are violated; even if the alleged conduct is not true.

10. Members who are violated for reasons of homosexuality are task with causing great bodily harm to "sissy" in order to salvage credibility with the organization, or

11. In the event that the member whose suspected of homosexuality refuses to carry out the task or the rumors are true, another member with the organization (STG) is task with causing great bodily harm to both the member and the sissy.

12. These conflicts arise out of preventable circumstances whereas department officials housed a homosexual and a gang member in the same cell, to be roommates.

13. In most instances, once reported to department official, the issue is resolved instantly by rehousing the sissy (plaintiff) with someone with a neutral profile.

14. However, in other instances, department officials act unprofessional and unreasonable disregarding the notion of security, safety and peace.

15. In February 2014, the plaintiff entered the FDOC whereas he remains in custody.

16. During the initial intake processing at the FDOC, South Florida reception center and subsequently every facility the plaintiff is transferred to, he is asked several questions to include sexuality preferences and sexual identity related questions.

17. At all times, the plaintiff acknowledged to Department Officials that he identifies as a gay male (homosexual) which is entered into the departments database systems.

18. The department also enter inmates that are in security threat gangs in the database and at various time as it becomes known to officials.

19. And furthermore, the department has a senior correctional officer (also know as the "gang sergeant ") at every facility to combat potential threats the STG'S pose to the overall function of Correctional Institutions.

20. The gang sergeant is task with collecting continuous knowledge on how gangs communicate with one another, as well as becoming familiarize with symbol, creeds and "laws" of each gang.

21. The department's gang sergeant is responsible for developing a report concerning security threat gangs involvement and, providing those reports to its superior.

22. This information that the gang sergeant collects is use to ensure institutional security.

23. On August 11, 2021, the plaintiff was reassigned from one housing location to a different dorm and cell location.

24. Upon arriving to his new cell, the plaintiff encountered his cellmate who inquired whether or not the plaintiff was gay.

25. The plaintiff acknowledged his sexuality at which his cellmate stated that he could not enter because he (cellmate) was a gang member and the plaintiff was gay.

26. The plaintiff reported the issue to Lieutenant Adams, who in turn disregarded the plaintiff claims and ordered the plaintiff to go into his assigned cell.

27. The plaintiff attempted to explain to Lieutenant Adams the danger he was placing the plaintiff but Lt. Adams disregarded that notion and order the plaintiff to return to his assigned cell for the second time.

28. The Plaintiff refused to obey Lt. Adams orders and invoked his request for protective management.

29. Lt. Adams ordered the plaintiff to submit to hand restraints at which the plaintiff complied.

30. The plaintiff was escorted to Administrative Confinement where days later he received a disciplinary report for disobeying orders.[2]

31. The plaintiff was found guilty of the disciplinary report and sentenced to (15) days in disciplinary confinement. Even after conveying the incident to the disciplinary team.

32. The plaintiff was released from confinement and some time later, on August 26, 2021, official attempted to housed the plaintiff with another gang member.

33. The plaintiff attempted to report to his dorm officers, Sergeant T. Childree and Officer J. Bailey who was in the hallway counseling another inmate.

34. At first instance that the plaintiff motioned for the door entering the hallway, Officer J. Bailey threaten to use chemical agents on the plaintiff.

35. The plaintiff waited to be acknowledged by the officers but they left the plaintiff without hearing the plaintiffs concerns.

40. About fifteen minutes later several STG inmates, including the plaintiff opposing cellmate approached the plaintiff said "you better tell those people whats up. You not coming in there."

41. The dormitory door opened as one inmate was coming in the plaintiff went into the hallway even after being yelled at by the officer in the officer station to return back to his wing.

---

[2] The plaintiff received several disciplinary reports after his incident when officer again tried to house him with STG inmates.

42. The plaintiff ignored those orders and found Sgt. T. Childree and Officer J. Bailey.

43. At first notice of the plaintiff, Sgt. Childree cursed the officer in the station for letting the plaintiff out.

44. Because, the plaintiff perceived that Sgt. Childree and Officer J. Bailey wasn't allowing him to express his concerns, the plaintiff threw up his hands and stated: "I'm not trying to check-in, I have an issue that we can resolve".[3]

45. With that, the two officers (Childree and Bailey) allowed the plaintiff to proceed talking.

46. The plaintiff express again that he wasn't trying to check in, but he is gay and his cellmate is a gang member and just wanted a cell change with someone willing to accept him as a cellmate.

47. The plaintiff also expressed that he's not refusing to go into the cell, However if he (the plaintiff) does the likelihood of harm is inevitable.

48. Officer J. Bailey responded, "I like that idea. Let's go find you a roommate".

49. Officer J. Bailey and Sgt. T. Childree escorted the plaintiff back into the wing and Officer J. Bailey asked for volunteers who didn't mind having me as a roommate.

50. No one volunteered, so Officer J. Bailey stated: "I will go check the system and see what I can do".

51. The plaintiff waited for over forty-five minutes as it approached the three o'clock hour. (Shift change for the officers is at 7AM, 3PM, and 11PM).

52. The plaintiff swiddle his way back into the dorm hallway and found Sgt. T. Childree again.

53. Sgt. T. Childree cursed the officer in the station again and nonetheless tried to convince me to go back in the wing but the plaintiff refused.[4]

---

[3] Check-in or checking-in is a terminology commonly used to refer to "request for protective management". Some official prefer to see the requestee bleeding as oppose to preventing harm.

54. Sgt. T. Childree motioned for Officer J. Bailey to accompany him and they both approached me.

55. Sgt. T. Childree grabbed the plaintiff (not aggressively) and stated as they motioned the plaintiff towards the door and inside "you going to cell……" and slammed the door behind the plaintiff.

56. Shift changed happened and Sgt. W. Carlton approached the plaintiff as he sat hopeless and defeated in the dayroom and asked the plaintiff did he not know what cell he was assigned to.

57. The plaintiff brief Sgt. W. Carlton on the issue at hand after which Sgt. W. Carlton responded are you saying " your roommates threatening you?''

58. The plaintiff responded, "In a sense, he is. Yes".

59. Sgt. W. Carlton conducted Count and departed the Dorm.

60. Sgt. W. Carlton approached the Plaintiff and expressed that he handled the situation. Specifically Sgt. W. Carlton stated he reassigned the Plaintiff cellmate to a different cell and the Plaintiff would be going into his assigned cell alone "by yourself."

61. Sgt. W. Carlton sent Officer R. Holmes to supervise the transition.

62. Count cleared, and the inmates assigned to the Dorm wing was released from their cells to roam around freely. (Normal activity).

63. Officer R. Holmes called the Plaintiff to settle into the cell, however as the plaintiff approached the cell he witness another inmate's property.

64. In the presence of Officer R. Holmes, an inmate confronted the Plaintiff and stated, "You ain't coming in here."

65. Officer R. Holmes responded to the inmate: "Why?" and the inmate responded back "cause he's gay."

---

[4] The plaintiff knew that if Sgt. T. Childree and Officer Bailey did not assist the plaintiff the issue will not be resolved at all.

66. Several other inmates started to surround the Plaintiff. The Plaintiff heard someone tell Officer R. Holmes, "Ya'll about to start an uproar."

67. Officer R. Holmes left the Plaintiff, and moments later the Plaintiff began to head toward the door leading into the hallway carrying his belongings.

68. Sgt. W. Carlton intercepted the Plaintiff and inquired where he was going.

69. The Plaintiff responded, "I'm requesting Protective Management. I'm in fear for my life."

70. Sgt. W. Carlton grabbed the Plaintiff's belongings and stated, "No you're not. You going back into your cell."

71. The Plaintiff replied, "I want to talk to the Captain. You can't do this. They going to hurt me. Ask Holmes what just happened."

72. Sgt. W. Carlton stated "No. See him when you see him. Go back inside."

73. The Plaintiff lied, "Well I gotta go to insulin. They just called."

74. The Plaintiff departed the Dorm in search and hopes of running into the Captain.

75. The Plaintiff came in contact with several Officers, some of which who recognized him as not an insulin dependant inmate.

76. This Officer ordered the Plaintiff to report back to his assigned Dorm.

77. The Plaintiff expressed he had a situation and needed to speak with the Captain immediately, however,

78. The Officer ignored the Plaintiff's claims, explaining that the Plaintiff was interfering with them feeding dinner.

79. The Plaintiff remain adamant about his need to speak with the Captain as a different Office of the several proceeded towards the Plaintiff motioning for his chemical agent can.

80. The Plaintiff threw his hands up in surrender, backing away and said, "Okay."

81. The Plaintiff went back into his Dorm and encountered Sgt. W. Carlton and Office R. Holmes together.

82. The Plaintiff invoke his request for Protective Management status. At which Sgt. W. Carlton responded, "Go to Chow and don't come back."

83. The Plaintiff left the Dorm for the Second time upon the announcement of Chow.

84. In the Dining Hall, the Plaintiff spoke with several Officers concerning the inactions of other Officers and the issues the Plaintiff was facing with other inmates in the Dorm. However, nothing was done to help the Plaintiff.

85. Leaving the Dining Hall, the Plaintiff approached Sergeant Rabbe who was among the several Officers' during the encounter in Paragraph 74-79.

86. The Plaintiff told Sgt. Rabbe the issues he was having in the Dorm and restated what Sgt. W. Carlton had told him about not returning to the dorm.

87. Sgt. Rabbe called Sgt. W. Carlton over the radio to meet up with him.

88. Sgt. Rabbe asked Sgt. W. Carlton, "Did you tell this inmate (the Plaintiff) not to returned to the Dorm?"

89. Sgt. Carlton denied the allegations at which Sgt. Rabbe directed a third Officer to cuff the Plaintiff and escorted him to Confinement.

90. Sgt. Rabbe told Sgt. Carlton to write the Plaintiff a Disciplinary Report for "Lying to Staff."

91. In Conclusion, the Plaintiff submits he has talked with several other Homosexual inmates concerning their experience and housing attempted with gang members, and will continue to do so during and throughout the ligation of this action.

92. In just taking with only two inmates, at Holmes C.I., the experiences they recount are disturbingly gruesome.

93. Security threat gangs are polluting the FDOC, and at this notion, life for the Plaintiff and others-alike are at risk of harm; what has happened to the Plaintiff is continuously happening with regards to being thrown in Disciplinary Confinement because official fail to take reasonable precautions.

## V. LEGAL CLAIM FOR RELIEF.

### DELIBERATE INDIFFERENCE

94. The Defendant T. Childree violated the Plaintiff Eighth Amendment Right to the United States Constitution when the Defendant was deliberate Indifferent to the Plaintiff safety and disregarded the risk of serious harm.

95. The Defendant T. Childree was aware of the plaintiff safety concerns and disregard that risk.

96. The Defendant T. Childree is a senior correctional officer in the FDOC and has basic knowledge regarding the threat security threat gangs pose to homosexual inmates.

97. The Defendant T. Childree deliberately disregarded the risk posed to the plaintiff safety by failing to remove the plaintiff out of a hazardous event whereas the need evident on September 26, 2021.

### DELIBERATE INDIFFERENT

98. The Defendant J. Bailey violated the plaintiff's eighth amendment right to the United States Constitution when the Defendant was deliberate indifferent to the plaintiff and disregarded the risk of serious harm.

99. The Defendant J. Bailey is a senior correctional officer in the FDOC and has basic knowledge regarding the threat security threat gangs pose to homosexuals inmates.

100. The Defendant J. Bailey deliberately disregarded that risk posed to the plaintiff out of a hazardous event whereas the need was evident on September 26, 2021.

## DELIBERATE INDIFFERENT

101. The Defendant W. Carlton violated the plaintiff eighth amendment right to the United States Constitution when the Defendant was deliberate indifferent to the plaintiff safety and disregarded the risk of serious harm.

102. The Defendant W. Carlton is a senior correctional officer and has basic knowledge regarding the threat security threat gangs pose to homosexual inmates.

103. The Defendant W. Carlton disregarded that risk posed to the plaintiff safety by failing to remove the plaintiff out of a hazardous event whereas the need was event on September 26, 2021.

## DELIBERATE INDIFFERENT

104. The Defendant R. Holmes violated the plaintiff eighth amendment right to the United States Constitution when the Defendant was deliberate and indifferent to the plaintiff safety and disregard the risk of serious harm.

105. The Defendant R. Holmes is a [Senior] correctional officer and has basic knowledge regarding the threat security threats pose to homosexual.

106. The Defendant R. Holmes deliberately disregarded that risk posed to the plaintiff safety by failing to remove the plaintiff out of the hazardous event whereas the need was evident on September 26, 2021.

## DELIBERATE INDIFFERENT

107. The Defendant Mark Inch violated the plaintiff eighth amendment right to the United States constitution when the Defendant was deliberate indifferent to the plaintiff (homosexuals) safety and disregarded that risk of serious harm.

108. The defendant mark Inch is responsible for the overall direction for the Department of Corrections and as such is responsible for the care and safety of all inmates.

109. The Defendant Mark Inch has failed to implement sound policies that protect homosexual inmates [the Plaintiff] from security threat gangs subjective harm.

110. The security threat gangs intolerance of homosexuality lifestyle is not a new or isolated behavior but is well familiarized by the Defendant.

111. The Defendant Mark Inch was subjectively aware of the serious risk of harm through department reports and a widespread abuse and assaults on homosexual inmates at the hands of a vast majority of security threat gang members.

112. The Defendant Mark Inch failed to act to protect and resolve the risk of serious harm posed to the plaintiff.

## RELIEF REQUESTED

1. Jury trial.

2. Nominal damages. (each defendant)

3. A declaration judgment stating that the Defendant's acts violated the plaintiff's rights under the United States Constitution.

4. An injunction prohibiting the Florida Department of Corrections from housing security threat gang members inmates with knowingly LGBTQ plus inmates.

5. An order directing the Florida Department of Corrections to develop comprehensive policy to protect LGBTQ plus inmates from preventable harm.

6. Any other relief this court deems, just and proper and equitable.

## VII

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, I certify that to the best of my knowledge, information, and belief, this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by

existing case law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support after a reasonable opportunity for further investigation or discovery; (4) the complaint otherwise complies with the requirements of rule 11.

I agree to timely notify the Clerk's Office if there is any change to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date 11/28/2021  Plaintiff's Signature _____  11/28/21

Printed Name of Plaintiff  DWAYNE LEBARR

Correctional Institution  HOLMES C.I., 3142 Thomas Drive, Bonifay, FL, 38425

Address _____

I certify and declare, under penalty of perjury, that this complaint was delivered to prison officials for mailing on this 28 day of November, 2021.

Dwayne Lebarr B12553

14

DWAYNE LEBARR #B12553
HOLMES CORRECTIONAL INSTITUTION
3142 THOMAS DRIVE
BONIFAY, FLA 32425

USPS TRACKING #
9114 9022 0078 9497 9489 71

MAILED FROM
A STATE
CORRECTIONAL
INSTITUTION

UNITED STATES DISTRICT COURT
111 N. ADAMS STREET
TALLAHASSEE, FLORIDA 32301-7730

DEC 06 2021



NOV 28 REC'D
FOR MAILING